MARY A. LEYRER SMITH, personally and as executrix of the estate of Mabelle L. Seguin, deceased, complainant,

*v.*

BANKERS TRUST COMPANY et al., defendants.

[Decided November 2d, 1925.]

**Corporate Shares—Ownership—Fraud Alleged—Testatrix Was Owner of Certain Shares Which Her Husband Had Transfered to Another, Upon Demand of Wife They Were Retransfered, the New Certificate Being in Name of Both Wife and Husband—Certificate Remained in Possession of Wife Until Her Death—Held, To Be a Part of Her Estate, That Husband Has No Interest Therein.**

On bill, &c. On final hearing.

*Mr. S. Paul Ridgway,* for the complainant.

*Mr. John B. Slack,* for the defendant Norcum L. Seguin.

INGERSOLL, V. C.

Mabelle L. Seguin, the deceased daughter of the complainant, by her last will and testament devised and bequeathed all her estate, except the sum of $100, to her husband, and appointed her mother, the complainant, executrix of the said will.

In her lifetime, the said Mabelle L. Seguin was the owner of five shares of the capital stock of the Bankers Trust Company, as evidenced by certificate of stock No. 41.

I am satisfied that the defendant Norcum L. Seguin, the husband of said Mabelle L. Seguin, without authority and by fraud, caused the said certificate No. 41 to be canceled and a new certificate, No. 57, to be issued in the name of one Winslow L. Taylor.

In the meantime, or shortly thereafter, the said Mabelle L. Seguin, ascertaining and believing that her husband was conducting himself and his and her affairs in a manner fraudulent and inimical to her interests, insisted that the certificate of stock for said five shares of stock be placed in her custody, and in such manner as to be under her control. Thereupon, the said husband obtained possession of said certificate of stock No 57, and on or about September 7th, 1920, caused the same to be canceled and a new certificate, No. 60, was issued in the name of "Mabelle L. Seguin or Norcum L. Seguin."

This certificate he delivered to his wife, who received it and placed it in her safe deposit box in the Boardwalk National Bank, where it remained until after her death.

It is clear that this stock was the property of the deceased; that the husband, without authority, caused the certificate, which was originally in the name of the wife, to be canceled and a new certificate to be issued to Taylor; that when accused by the wife of his fraudulent conduct, the husband obtained control of the certificate and caused the new certificate to be issued in their joint names. He evidently had no authority to do this, but did the wife, by accepting it and keeping possession of it for at least several months, estop herself during her lifetime, and her representative since her death, from claiming the ownership in its entirety of said shares of stock.

There is nothing in the evidence to indicate that Mrs. Seguin's attention had been called to the fact that the certificate was not in her name alone. I am convinced that the stock was her property, and that, upon her demand, the husband regained control of it, had the new certificate issued and delivered to her. It was her's—he had no interest in it, and the court will not now lend its aid to assist him in securing this stock after his wife's death—this wife who was compelled to take severe measures to obtain it from him, when he had it illegally in his possession.

There is no proof that she accepted the stock in the two names as a compromise. I am constrained to believe that he,

in causing the stock to be issued in the two names, was continuing his attempt to control the stock, and that he cannot now take advantage of the fact, that she retained possession of the stock without taking action thereon.

I will advise a decree in accordance with these views.